DECISION AND JUDGMENT ENTRY
{¶ 1} Darla D. Caldwell ("Mother") appeals the Gallia County Court of Common Pleas' decision finding her in contempt for failure to adhere to the visitation schedule ordered by the court upon Mother's divorce from Father, Gary T. Caldwell. Mother contends that the trial court erred in failing to provide her with the opportunity to purge the contempt finding. Because the trial court offered Mother the opportunity to avoid any penalty for the contempt by suspending the sentence, we find that the trial court did provide Mother with the opportunity to purge the contempt. Mother next contends that the trial court erred in amending the original visitation schedule to provide grandparent visitation. We disagree, because the trial court did not modify the original visitation schedule, but only clarified the original schedule as it relates to transportation of the children. Mother next contends that the trial court erred in imposing a $1,000 fine for a first-offense contempt charge. Because common pleas courts possess inherent authority, which cannot be limited by statute, to punish violations of their lawful orders, we disagree. Finally, Mother contends that the record does not contain sufficient evidence to support a finding of contempt. Because the record contains evidence that clearly and convincingly demonstrates that Mother failed to affirmatively provide Father with visitation, we disagree. Accordingly, we overrule each of Mother's assignments of error, and we affirm the judgment of the trial court.
 I. {¶ 2} Mother and Father divorced in 2001. The divorce decree included a Shared Parenting Plan with respect to Mother and Father's daughter, who was born in 1989, and their son, who was born in 1993. Pursuant to the Shared Parenting Plan, Father was to have parenting time with the children, in part, every other weekend from after school on Friday until Sunday evening at 6:00 p.m., and every Wednesday after school. Additionally, the Shared Parenting Plan required Mother and Father to "encourage good feelings from their children about the parent and that parent's extended family."
 {¶ 3} Despite this agreement, Father did not receive any visitation with his daughter beginning in March of 2002. On several occasions, Father arranged for his parents, the children's paternal grandparents, to pick up the children from school and bring them to his house for visitation. Mother would not allow the school to release the children to the paternal grandparents. Father filed a motion for contempt, and still had not received visitation time with his daughter as of the day of the contempt hearing, July 3, 2002.
 {¶ 4} The record from the contempt hearing reveals, through a psychologist's report and testimony of Mother and Father, that the daughter does not wish to spend time with Father, and that she feels Father is too strict. Mother admitted that she failed to compel the daughter to visit with Father, but maintained that she has always encouraged the daughter to do so. The psychologist's report states that the lack of cooperation between Mother and Father was giving the thirteen year old girl "an uncharacteristically influential position (for a minor child) when it comes to determining conditions under which she will or will not visit with her father."
 {¶ 5} The trial court found Mother in contempt of the Shared Parenting Plan and imposed thirty-day jail sentence and a $1,000 fine, but suspended both sanctions. Additionally, the trial court found that Father's parents, the paternal grandparents, shall be permitted to pick up the children from school on the days Father is scheduled to receive after-school visitation.
 {¶ 6} Mother appeals, asserting the following assignments of error: "I. The trial court erred when it did not afford [Mother] the opportunity to purge herself of the civil contempt. II. The trial court erred when it modified the parenting plan of the parties by expanding the companionship or visitation rights of the grandparents without following the procedures and the relevant factors set forth in R.C. 3109.051. III. The trial court exceeded its authority in imposing a $1,000.00 fine for a first offense finding of contempt. IV. The trial court abused its discretion and prejudicially erred by failing to apply the principles applicable to the situation; entering said judgment and order without sufficient supporting evidence and against the manifest weight of the evidence and contrary to law; disregarding the evidence, the applicable law and finding [Mother] in contempt."
 II. {¶ 7} In her first assignment of error, Mother contends that the trial court erred when it failed to afford her the opportunity to purge the contempt finding entered against her.
 {¶ 8} A finding of contempt arising from one party's failure to honor a court-ordered visitation schedule usually constitutes civil contempt, because the finding is designed to coerce future compliance with the court order. Summe v. Summe (June 6, 1990), Montgomery App. Nos. 11452, 11474, citing Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250. A sanction for civil contempt must allow for purging.State v. Kilbane (1980), 61 Ohio St.2d 201. However, "it is difficult to formulate a remedy to allow purging of contempt for violation of a visitation order. Unlike a support arrearage case where the contemnor can pay the monetary amount and purge himself of any alleged contempt, a trial court cannot fashion a remedy to correct past visitation violations but can compel future compliance with the court-ordered visitation schedule and, thus, allow the contemnor to purge himself of any contempt." Summe,
citing Smith v. Smith (1980), 70 Ohio App.2d 87, 91-92; Smith v. Smith
(Jan. 27, 1988), Pike App. No. 397. Thus, by suspending the sentence imposed upon a party found in contempt for violation of a visitation order, the court effectively allows for purging of the contempt. Summe;Smith v. Smith (Jan. 27, 1988), Pike App. No. 397.
 {¶ 9} In this case, the trial court suspended Mother's sentence. By suspending Mother's sentence, the trial court allowed Mother the opportunity to purge herself of the contempt through compliance with the court's order. Therefore, we overrule Mother's first assignment of error.
 III. {¶ 10} In her second assignment of error, Mother contends that the trial court erred in modifying the Shared Parenting Plan by allowing visitation for the paternal grandparents.
 {¶ 11} In its decision, the trial court granted Father's parents, the children's paternal grandparents, permission to pick up the children from school on the days Father is scheduled to have after-school visitation with the children. Mother contends that this constitutes an alteration of the visitation schedule, and that Father must follow R.C.3109.051 in order to bring the issue of companionship rights of grandparents before the court. However, upon review of the original Shared Parenting Plan and the trial court's order, we find that the trial court did not alter its previous order, but merely clarified it.
 {¶ 12} "If a divorce decree is susceptible to two possible interpretations, a court must adopt an interpretation that gives effect to the decree in its entirety without eliminating a part of the decree."Ward v. Ward (1983), 13 Ohio App.3d 302, 303; Birchfield v. Birchfield
(Sept. 15, 1986), Meigs App. No. 370. The court must give common words appearing in a divorce decree their ordinary meaning unless some other meaning is clearly suggested from the face of the decree or its overall contents. Id.
 {¶ 13} In this case, the Shard Parenting Plan (which is part of the parties' divorce decree) provides at paragraph three, entitled "SCHEDULE OF PARENTING TIME", that "[i]f one parent is not able to exercise his or her parenting time the time shall be offered to the other natural parent. If the other natural parent is not available the time should be offered to the respective grandparents." Subparagraph 3.12 of the decree, entitled "Transportation ", provides "[t]he residential parent at the particular time said transportation is required shall be responsible for the transportation of the minor children for school, recreation, extracurricular activities, medical attention, etc."
 {¶ 14} We find that the language contained in subparagraph 3.12
does not require either parent to actually drive the children to or from a particular place. Rather, it merely requires that the residential parent be responsible for providing proper transportation for the child. Common understanding of a child's transportation needs dictate that the residential parent can entrust the transportation of the children to a responsible adult, such as a school bus driver, another parent in a carpool, or a grandparent.
 {¶ 15} The record from the contempt hearing reveals that Mother did not defend herself on the grounds that Father was unable to exercise his visitation or that Father tried to give his visitation time to the paternal grandparents. Rather, Mother merely admitted that she refuses to allow the paternal grandparents to transport the children from school to Father's home for visitation with Father. Thus, the record reveals that Father occasionally arranges for another responsible adult to transport the children from school to visitation with him, and that Mother refuses to allow that transportation to take place. Further, nothing in the record indicates that Mother takes it upon herself to transport the children to Father's for visitation on the occasions when she refuses to allow for the transportation Father provides.
 {¶ 16} We find that the trial court's interpretation of the Shared Parenting Plan to permit the children's grandparents to provide transportation from school to visitation is consistent with the plain meaning of the agreement. Thus, the trial court did not modify the Shared Parenting Plan when it granted the grandparents permission to pick up the children from school. Accordingly, we overrule Mother's second assignment of error.
 IV. {¶ 17} In her third assignment of error, Mother contends that the trial court exceeded its authority in imposing a $1,000 fine for a first offense finding of contempt.
 {¶ 18} Contempt proceedings are means through which the courts enforce their lawful orders. Cincinnati v. Cincinnati Dist. Council 51
(1973), 35 Ohio St.2d 197, 202. The power to punish for contempt is inherent in the courts, a separate co-equal branch of government that was established by Section 1, Article IV of the Ohio Constitution, and it exists independently from express constitutional provisions or legislative enactments. Turner v. Albin (1928), 6 Ohio Law Abs. 341; Ohiov. Local Union 5760 (1961), 172 Ohio St. 75. Thus, while the General Assembly may prescribe procedures for judicial determination of indirect contempt, it cannot limit the court's power to punish contempt. FirstBank of Marietta v. Mascrete, Inc. (1998), 125 Ohio App.3d 257, 265;Carter v. Carter (Nov. 23, 1994), Montgomery App. Nos. 14409, 14530, 14574, citing In Matter of Lands (1946), 146 Ohio St. 589, 595. Therefore, while a common pleas court has a duty to follow the procedure for a contempt proceeding as outlined by R.C. 2705.05(A) (e.g. the court must conduct a hearing), the common pleas court is not limited by the statutory provisions outlining the penalties that the court may impose.McDaniel v. McDaniel (1991), 74 Ohio App.3d 577, 579; Olmsted Twp. V.Riolo (1988), 49 Ohio App.3d 114, 116-117; Carter, supra. A common pleas court may exercise its discretion to impose any sanction that is reasonable in light of the contemptuous conduct. McDaniel at 579;Carter, supra.
 {¶ 19} The sentence imposed for a finding of contempt is subject to an abuse of discretion standard of review. Id. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 20} In this case, we cannot say that the trial court acted in a manner that is arbitrary, unreasonable, or unconscionable when it imposed a $1,000 fine upon Mother. Rather, the court acted within its inherent authority and discretion to enforce its lawful order, the Shared Parenting Plan. Accordingly, we overrule Mother's third assignment of error.
 V. {¶ 21} In her fourth assignment of error, Mother contends that the trial court abused its discretion when it found her in contempt. Mother contends that the trial court found her in contempt despite a lack of clear and convincing evidence supporting each of the trial court's findings. Specifically, Mother contends that the record does not contain evidence to support the trial court's findings: (1) that she denied Father visitation deliberately, (2) that she failed to inform Father of the children's illnesses or school functions, (3) that she failed to allow Father's parents to pick up the children when a lawful order existed permitting them to do so, (4) that she willfully and intentionally attempted to decay the relationship between the children and Father, or (5) that she carried out a pattern of causing hardship and failed communication between Father and the children.
 {¶ 22} Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority. Dozer v. Dozer (1993),88 Ohio App.3d 297, 302, citing State v. Flinn (1982), 7 Ohio App.3d 294. A person may be punished for contempt for disobeying or resisting a lawful order, judgment, or command of the court. R.C. 2705.02; In reAyer (1997), 119 Ohio App.3d 571, 575; Dozer at 302. Courts must make civil contempt findings based upon clear and convincing evidence. Dozer
at 302, citing ConTex, Inc. v. Consol. Technologies, Inc. (1988),40 Ohio App.3d 94. However, decisions in contempt proceedings lie within the discretion of the trial court, and we will not reverse absent an abuse of discretion. Ayer at 575; Dozer at 302, citing Chaudhry v.Chaudhry (Apr. 8, 1992), Summit App. No. 15252.
 {¶ 23} Under Ohio law, a custodial parent "has a duty to do more than merely encourage the minor child to visit the noncustodial parent."Smith v. Smith (Jan. 27, 1988), Pike App. No. 397, citing Smith v. Smith
(1980), 70 Ohio App.2d 87. Absent a showing of unfitness of the visiting parent, the minor's reluctance to visit with his or her parent generally is not enough to prevent visitation. Smith, 70 Ohio App.2d at 90; Toalsonv. Toalson (Sept. 10, 1987), Columbiana App. No. 86-C-21. Until the minor is of an age at which he or she can affirmatively and independently decide not to have any visitation with a parent, the minor's custodian must compel visitation. See Newhouse v. Toler (Nov. 20, 1997), Cuyahoga App. No. 71834 (finding of contempt against residential parent despite fourteen year old child's expressed wish to discontinue visitation);Smith, Pike App. No. 397, supra (finding of contempt against residential parent despite ten year old child's expressed wish to discontinue visitation); compare In re Jergens (Jun. 26, 1998), Montogomery App. No. 16848 (sixteen and seventeen year old children not compelled to visit father in prison when children expressed no interest in seeing father and father had murdered children's mother).
 {¶ 24} In this case, the record reveals that the Shared Parenting Plan provided for Father to receive visitation with the daughter at regular intervals. From March 2002, shortly after the daughter's thirteenth birthday, until the time of the contempt hearing, Father did not receive visitation with the daughter. Mother testified that she did not affirmatively compel the daughter to visit Father. These facts constitute clear and convincing evidence that Mother disobeyed a lawful court order. We do not address whether the record contains evidence supporting each of the trial court's factual findings, as the finding that she disobeyed a lawful court order is sufficient to support the finding of contempt.
 {¶ 25} Therefore, we find that the trial court did not abuse its discretion in finding Mother in contempt. Accordingly, we overrule Mother's final assignment of error, and we affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Abele, J.: Concurs in Judgment and Opinion as to Assignment of Errors I, II, IV; Concurs in Judgment only as to Assignment of Error III.
Harsha, J.: Concurs in Judgment and Opinion.